This is Ballinger v. City of Danville. That is case number 4110637 for the appellant, Mark Morthland, and for the appellee, John Martin. Mr. Morthland. Thank you. Good morning. I'm Mark Morthland. I'm here on behalf of Dennis Ballinger. We, uh, I guess the theme, the dual theme of this argument could be, where's my house, or a blind nut finds a squirrel, or a blind squirrel finds a nut every once in a while. The facts are pretty simple. Ballinger holds a piece of property, acquired ownership November 1st, 2005. January 9th, 2008, the city posts a notice to remediate on the property. February 7th, City of Danville sends a, uh, that same notice to remediate to Mr. Ballinger, although it was not signed for by Mr. Ballinger, and that's in the common law record. It was signed for by, uh, someone by the name of Karen Kazmaier. What's the relationship between, between the lady who signed for it and Mr. Ballinger? Well, as far as, I don't know. I, I, quite frankly, I don't know. I, we could assume it was his secretary, um, but that I don't know. It's not in the record. It's not in the record, to my recollection. Then after that, February 8th, 9th, and 10th of 2008, that same notice to remediate was published in a local newspaper, as required by the statute. And then I believe it was on February 20th, which is 42 days after the property was posted in violation of the statute, that same notice to remediate was reported in the reporter's office in Berlin County, Illinois. Now, March 14th through the 19th, the property is demolished. And May 7th, a complaint is filed. May 7th, 2009. The affidavit in opposition to, uh, the City of Danville's motion to dismiss the First Amendment complaint. So, well, let me back up for a moment, if I may. The affidavit that Ballinger signed and, and we filed said that he noticed that the property was missing, where's my house, back in, uh, June 21st of 2008. He filed suit May 7th of 2009. At the time the lawsuit was filed, we did not know when that property had been knocked down. And I think that you'll find in the transcript, although not, no evidence was submitted, but, but I argue, we did not know. And the first motion to dismiss, which was filed by the City of Danville, just said that the property was demolished in March of 2008. It did not provide us with a specific date. And then, when I filed an amendment complaint, another motion to dismiss an amendment complaint was filed pursuant to 2-6.9. And at that time, they specifically set out the dates in which the property was demolished. That is the first time that we knew when a property was demolished. Now, you can say that, well, what about the notice, didn't the notice, if Mr. Ballinger actually got the notice, didn't the notice say that you had 30 days from the date of the notice in which to, to remediate the problem? No, the notice doesn't say that. So, in any event, a written order is filed granting the motion to dismiss on July 5th, 2011. We're dealing with a three-count complaint. The amended complaint has three counts. First count is wrongful demolition, second count is unconstitutionality of the statute, and the third count is seeking a declaration of invalidity of the lien that was reported by the city of Danville. The court, after hearing arguments, and Mr. Martin and I submitted written memorandums, took the cause under advisement, and then entered a ruling granting the motion to dismiss based upon the Tort Immunity Act's one-year statute of limitations. Now, the blind squirrel finds a night. The clerk's office notifies myself and Mr. Martin via letter that we need to be prepared to argue the City of East St. Louis case. And if I may borrow a phrase from law school, I'm shocked I can remember that far back, but that case is on all fours with what you have presented to me today. City of East St. Louis demolishes a piece of property identical to our situation. I believe, in fact, they use the fast-track method. But be that as it may, they file a lawsuit beyond the one-year statute of limitations in the Tort Immunity Act. And the trial court in that particular case, my recollection serves me, denies a defendant's motion for summary judgment, and then the parties agree to submit three certified questions to the appellate court fifth district. And the questions basically are, does the one-year statute of limitations apply to our situation, or is it the five-year statute of limitations? The appellate court concludes in that particular case that it is a five-year statute, that a wrongful demolition case is exempted out of the one-year statute of limitations under the Tort Immunity Act and is governed by the five-year statute under the Code of Civil Procedure. They use as part of their reasoning the finding in this Rain Tree Homes versus the Village of Long Grove case, which is an Illinois Supreme Court case, which dealt with that issue and the one-year statute. And they said in that particular situation, the plaintiff in that case was seeking a declaratory judgment that a particular ordinance, village ordinance, requiring payment of impact fees was not appropriate. The Supreme Court in that case said that that's not a case seeking damages, that in fact it is a case seeking restitution, and therefore we're not prepared to apply the one-year statute of limitations under the Tort Immunity Act. So, using the logic in Rain Tree Harvest Church of Our Lord versus the City of East St. Louis concluded that it is a five-year statute of limitations and not a one-year statute that governs in that situation, and I believe it governs in this situation. Now, at the time that we had briefed and argued this case before the trial judge, of course this case was not available to us. It didn't come out until, I guess, the request for rehearing was denied March 15, 2011. I think we had briefed and argued this case sometime in February or March of 2010. So, the issue really that the trial court focused on at that point in time was the one-year statute of limitations, and I argued that the discovery rule was applicable. And if this was an individual's home, residence, then obviously I drive home after work one night, my home is gone, then statute begins to run that day. But as I argued in the trial court, you've got a different situation with my client. Mr. Ballinger is a tax purchaser, and he purchases tax certificates in 95 counties throughout the state of Illinois. I'm speculating, because I don't know, but I'm speculating that he probably owns anywhere from 1,000 to 7,500 homes and parcels of real estate within the 95 counties in the state of Illinois. So, it's not unreasonable to assume that he may not discover a property being demolished for an extended period of time. So, he finds out June 21st of 2008 that the property, his house is gone, where did it go? And he files a lawsuit within 10 and a half months, 11 months after. Again, as I said, we didn't know when that property was demolished. We knew when we discovered it. And I think that the discovery rule says that it's when the statute of limitations says when the cause of action approved. That cause of action approved on the date that he discovered that his property, his residence was gone. Not his personal residence, but the home that he owned was gone. So, he had one year from that date within which to file a lawsuit against the city of Danville. And that was our focus in the trial court. Since we have been introduced to the Harvest Church of Our Lord versus the city of East St. Louis, as I said, that case is directly on point. Identical fact situation to what we have here. And I would urge this court to follow the reasoning and the conclusions of the Harvest Church of Our Lord and reverse the trial court with directions to send this case directly back to the trial court for further hearing. Thank you. Thank you, counsel. You'll have rebuttal, Mr. Martin. I'm Jack Martin. I represent the city of Danville, the Appallee in this case. The trial court granted our motion to dismiss based on the fact that the plaintiff did not file a suit in the one-year statute of limitations contained in Section 8-101 of the Tort Amenity Act. In the trial court, there was no dispute that the one-year statute of limitations applied. That was what, there wasn't any issue that did not apply. And the sole issue there on this topic of the statute of limitations was whether the suit was filed within the one year or not. That's the same issue, and that's the only issue I think that's here. The inapplicability of the one-year statute of limitations was not raised in trial court, not litigated in trial court. It's not part of this appeal either. What's our standard of review? Well, I would argue that an issue that was not litigated in the trial court cannot be retained on appeal. And there's a lot of case law about that. The one case that's been mentioned by this court and cited was the Mendelssohn case, which at 83-LF, third of 10-88, where the court said, quote, it is fundamental that a party may not urge for the first time on appeal, or for the purposes of overturning the decision below, an argument or a theory which is not presented to the trial court. End quote in the citations. And that case was cited with approval by this court in a case called Bolden v. Chiappa, 140-LF, third of 9-13. An opinion written, I believe, by Mr. Baldwin's father, as I recall, where he said, the court said, quote, yet a defendant may not raise on appeal a defense that is not interposed in its answer before the trial court. And down further they say, quote, therefore we believe the issue has, in fact, been waived. A trial court cannot err on an issue which has not been presented to it for a decision. For that reason, defense is not raised or waived. End quote. And I cite some authority there. It's true that maybe the Harvest Church case was not in existence when we had the ruling on the case, but certainly all these statutes were. The statute about the supposed inapplicability of the Tort Amendment Act in this case was certainly on the books for a long time prior to when we had this case heard by Judge DeArmi. So that's our first argument. There's other distinctions I'd make with Harvest Church. It's a 5th district case, not a 4th district case. I don't think there's any 4th district case or Supreme Court case ruling on the inapplicability of the one-year statute of limitations in a demolition case. So this would be a case of first impression here. Previously, other appellate court cases held differently as to the effect of the Tort Amendment Act section. The Haponiewski case, 147 L.F. 3rd 528, was a wrongful demolition case and said that the statute of limitations contained in 8-101, which is the same section we relied on below, applied. Now it's a two-year statute back then. Now it's a one-year statute. And their theory being and their reasoning is that the statute of limitations and the section we're talking about here in the Tort Amendment Act deal with different rights, deal with the liability. I think that's mentioned by Judge Steigman in the Collins case, which came out, I guess, even after the Harvest Church case. So you can still be liable, and you're not governed by the substantive terms of the Tort Amendment Act, yet one-year statute of limitations is a separate matter. You can still be liable, still have the separate one-year statute of limitations. We'd also cite the Cooper v. Weiss State development case, 158 L.F. 3rd 19. As to the issue that was litigated in this case, and it is part of this appeal, we believe the court correctly ruled the case was not filed within one year. As the trial court noted, the plaintiff had notice. Notice was sent pursuant to the statute. Counsel argues, well, the plaintiff himself did not sign for the notice. Well, that's not going to happen in every case. I don't know how you can guarantee it's going to be. The statute requires it to be mailed, which is what we did. The statute does not require that it be received by the owner himself. There certainly are situations where you're never going to find the owner. You've got a dilapidated and abandoned building. The owner's abandoned them. You can't find them. So the statute allows you to send notice to the last known address, the address for tax purposes. That's what's required. Not that you actually get it. You can hide and never get the notice if you wanted to. So he was notified that we were going to do that. And he has remedies. There's another remedy in the Act. When you get the notice, you can file a suit to stop the demolition. And that's another argument that we made below. The court did not reach that one because of the statute of limitations issue. And the timing here, it was established that the demolition was done by March 19, 2008. And that's when the statute of limitations began. Now, the plaintiff says, we didn't know when you tore it down.  So for March, you tore it down. June, he's there. The house is gone. He's still got nine months at least to file a lawsuit, under the one-year statute, but doesn't. And waits until two months past the statute of limitations to file the suit. Even in his medical complaint, he alleges the house was torn down sometime in March of 2008. The discovery rule simply does not apply here. That's where a party knew or should have known. And as the cases we cite in our briefs state, the test isn't when you actually knew, the test is when you knew or should have known. The discovery rule applies where the statute of limitations would expire before a party has reason to know he has a cause of action. The Garcia case, we cite the Brosny case, and as Justice McCullough stated in one of the cases, the Hitt case, a party has a duty to investigate. So when he sees this gone in June, you might wonder, when was that torn down? Particularly if you're planning on suing us. So we believe that the trial court properly applied the statute and that the case was properly dismissed, and we ask that you refer it. Thank you. Thank you, counsel. Any rebuttal? Yes. Thank you. I have to first confess that if my father were alive, he would agree that he and I argued a lot about a lot of things other than law. Mr. Martin citing a case that my father had authored, I'm going to disagree with him right now. In fact, the Rain Tree Homes case states an appeal from the section 2619 dismissal is similar to an appeal from the grant of summary judgment, and both are subject to de novo review. The next subject that Mr. Martin raised was that the Harvest Church of Our Lord was a 5th district case, and I guess suggesting that this court is not bound by the precedent established by the 5th district. That was another thing that my father and I used to debate, and my position has always been that there is one appellate court in the state of Illinois. It's divided into five districts, and one of those districts may have a few divisions. So we have an appellate court that has established precedents, and that is that the 5-year statute of limitations applies to a wrongful demolition case, and that's what we have here. Mr. Martin also pointed out that the statute provides that Mr. Ballinger could have filed suit to block this demolition. Had we known about it, we would have done something. But the problem is, the notice to remediate in this particular case, and it's in the common law record, doesn't tell you you have the right to file a lawsuit to block in an appropriate forum. You could file suit in an appropriate forum to block a demolition of the property. We didn't know that. What about the waiver argument? The fact that you didn't argue the statute showed that a demolition action is excluded from the Tort Immunity Act. No, I did not argue that. I didn't think that I had a good faith ability. I didn't know that that argument existed. And of course, this particular case, the Harvest Church of Our Lord, wasn't even out at the time we argued it. Right, but the statute itself says demolition actions are excluded from the Tort Immunity Act. But it didn't say that they were excluded from the one-year statute of limitations. But isn't that an argument you could have fashioned? Because if it's not included under the Tort Immunity Act, then why would the statute of limitations in the Tort Immunity Act apply? I guess that is an argument I could have made. I guess I was seeking damages, and I had filed a lawsuit, and I automatically just assumed that the one-year statute would apply. I assumed incorrectly. Counsel, Mr. Martin argued the statute does not require that the notice be received. What does the statute require regarding the notice? I think that the statute does, in fact. Well, no, it doesn't say that the owner or interested party has to receive the notice. But we're dealing with taking of property. We're taking real estate. And if you take a small claim summons, what is expected in a lawsuit when a summons is prepared and served on a defendant? You need to attach the complaint to notify them why they're being sued. You give them, on a date certain summons, you give them the time, the date, the courtroom, the address of where they need to be. And if they don't show up, there's language that says failure on your part to appear may result in a default judgment being made against you for the amount paid for in the complaint. That's putting someone on notice. Take a close look at this particular notice in this case. But doesn't the statute require certified mail? It does require certified mail. It says within 30 days after you post, you must publish in a local newspaper for three days. Once a day for three consecutive days. Record the same notice to remediate in the recorder's office in the county within which the property is located, which was done 42 days in our case after it was posted. And third, notice to remediate has to be mailed certified mail, return receipt requested to any owners or interested parties. And that was done? That part of it was complied with. The recording was not. It was 42 days after. But again, if you take a close look at the notice to remediate in this particular case, it doesn't tell you that you can block the actions of the city. But most importantly, I don't like this section of the statute, this fast track provision of the demolition statute. Here's what they say they might do in our notice. Since pressure has been in the past used for human occupancy, if you fail to take immediate action to demolish, repair, or enclose the building and fail to remove any garbage, debris, or other hazardous, noxious, or unhealthy substances or materials, the community no longer exists. The city of Danville will demolish, repair, or enclose the building and remove any garbage, debris, or other hazardous, noxious, or unhealthy substances or materials. What are they going to do? Are they going to board it up? Well, if you own anywhere from 1,000 to 7,500 properties in the state of Illinois and you can't monitor all of them, and if you get a notice from the city saying, we're going to board up your house, you may sit back and say, I'm going to let them board it up. They'll send me a bill and I'll write it in the check. Thank you.